DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Michael D. Stall, appeals from a judgment entered against him by the Lucas County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On July 24, 2005, appellant was indicted on one count of robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree. The matter proceeded to jury trial, and on September 1, 2005, the jury returned a verdict of guilty.
 {¶ 3} The facts presented at trial were as follows. On June 16, 2005, at approximately 4:00 p.m., appellant was standing outside of the Huntington Bank branch located at 300 Madison Avenue in Toledo, Lucas County, Ohio. Because the bank had just closed, the doors were locked and appellant was unable to get inside. Although locked from the outside, one of the doors was opened from the inside when the bank's last customer exited the building. At that point, appellant grabbed the door and entered the bank.
 {¶ 4} Bank teller Angela Jones saw appellant inside the bank and informed him that the bank was closed. Undaunted, appellant walked up to Jones's window and stated that he needed money. Jones again told him that the bank was closed. Appellant persisted, telling her, "No, I said I need money," and he showed her a bottle that he was carrying with him. Again, Jones told appellant that the bank was closed and that he could come back the next day. Appellant then grabbed the bottle by the neck and said, "I have a bomb, I'll blow this place up with you and everybody in it, I told you I need money." When Cheryl Higgins, a bank teller who was stationed at the window next to Jones, heard appellant's threat, she triggered her alarm and called the manager to come out of his office.
 {¶ 5} Upon receiving Higgins's call, bank manager Marshall Stockard came out of his office to see what was going on. Appellant saw Stockard, then turned and started walking towards the front door. Stockard, as yet unaware of the nature of the tellers' difficulty with appellant, simply escorted appellant out of the building.
 {¶ 6} Appellant was subsequently taken into custody, where he was questioned by Detective Jesse Villarreal. According to testimony by Villarreal, at the beginning of the interview, when Villarreal informed appellant that he was a suspect in an attempted robbery case, appellant denied ever having been at the bank. But after Villarreal produced a photograph showing appellant inside the bank, he changed his story and stated that he had gone into the bank in order to cash a check. Villarreal asked to see the check or a check book, and appellant admitted that he did not have one. Appellant then changed his story again, stating this time that he had gone to the bank to pay a bill. The detective asked to see the bill, but appellant could not produce it. Finally, appellant admitted that he had gone into the bank, but he denied demanding any money or making any threats.
 {¶ 7} On appeal, appellant raises the following assignments of error:
 {¶ 8} "I. DEFENDANT'S CONVICTION FOR ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} "II. THE STATE ATTEMPTED TO SHIFT THE BURDEN OF PROOF TO DEFENDANT IN VIOLATION OF HIS CONSITUTIONAL RIGHTS.
 {¶ 10} "III. THE TRIAL COURT ERRED BY NOT IMMEDIATELY INSTRUCTING THE JURY ON BURDEN OF PROOF."
 {¶ 11} We begin with appellant's first assignment of error, wherein he argues that his conviction was against the manifest weight of the evidence. A criminal conviction may be overturned on appeal either because it is against the manifest weight of the evidence or because there is an insufficiency of evidence. When determining whether a conviction is against the manifest weight of the evidence, the appeals court acts as a "thirteenth juror" to determine whether the fact-finder lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. In making this determination, we must review the entire record, weigh the evidence and all reasonable inferences, and consider witness credibility. Id. Because the fact-finder sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), 2d Dist. No. 16288.
 {¶ 12} When making a determination as to sufficiency of the evidence, the court must consider whether the evidence submitted is legally sufficient to support each of the elements of the charged offense. Thompkins, 78 Ohio St.3d at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would satisfy the average person of the defendant's guilt beyond a reasonable doubt. See id. at 390;State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} R.C. 2911.02(A)(2) relevantly provides:
 {¶ 14} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 15} "* * *
 {¶ 16} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;"
 {¶ 17} In the opinion of this court, the evidence in this case abundantly supports each of the elements of the offense charged. Under the circumstances of this case, appellant's words together with the use of the bottle provided enough evidence for the jury to find appellant guilty of robbery beyond a reasonable doubt. Further, after reviewing the entire record and weighing all the evidence and reasonable inferences, and considering witness credibility, we find nothing to suggest that the fact-finder lost its way or that there was any miscarriage of justice in this case.
 {¶ 18} Arguing against this conclusion, appellant states that he merely entered the bank and stated, "as a fact", and without any threat or demand, that he needed money. This was not, however, the evidence that was presented at trial, and it was not the evidence that the jury examined in making their decision. No witness presented by the state testified that appellant came into the bank and merely stated, as a fact, that he needed money. The defense did not offer any testimony whatsoever.
 {¶ 19} As further support for his position, appellant argues that "[t]he teller who was immediately next to the bank employee the Defendant was talking with, testified she did not know what the Defendant was doing with the bottle he had with him." Appellant is apparently referring to the testimony of Cheryl Higgins. Although Higgins did testify that she did not know what appellant was doing with the bottle, this was only a portion of her testimony. She also testified that appellant kept insisting that he needed money, and that when he was told the bank was closed, he stated that "he would blow it up or something to that effect." She additionally testified that appellant was holding a bottle around the neck, and that she thought there may have been something inside the bottle that would "go off", especially considering that he just stated that he would "blow it up". Taken in the context of all of Higgins's testimony, appellant's argument concerning a specific portion of that testimony simply falls flat.
 {¶ 20} Next, appellant points to testimony by the bank's security investigator, Dawn Carpenter. According to appellant, Carpenter testified that appellant "did not have a weapon, nor did he say give me money or I'll blow this place up." This court's review of Carpenter's testimony reveals that she never said any such thing. In fact, Carpenter testified at trial that she was not even at the bank at the time of the robbery, and that, although there were pictures of appellant in the bank at the time of the incident in question (which were taken by bank cameras), there were no voice recordings. Carpenter's testimony was presented solely for the purpose of admitting the relevant photographs.
 {¶ 21} Appellant's arguments are all without merit, and are singularly unpersuasive. As indicated above, the evidence in this case more than adequately supported appellant's conviction. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 22} Appellant argues in his second assignment of error that the state violated his constitutional rights when, in closing argument, the prosecutor mentioned that although appellant had stated that he had gone to the bank to cash a check, he could not produce a check. According to appellant, the prosecutor's reference to appellant's inability to produce a check improperly shifted the burden of proof to appellant.
 {¶ 23} A prosecuting attorney's conduct during trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Prather, 8th Dist. No. 83227, 2004-Ohio-2395, at ¶ 43. The test for prosecutorial misconduct is: 1) whether the remarks are improper; and 2) if so, whether they prejudicially affected substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 165.
 {¶ 24} In the instant case, defense counsel during his opening statement expressed the opinion that the evidence produced at trial would show that appellant went into the bank to cash a check. The prosecutor, in making reference at closing to appellant's failure to produce a check, merely remarked on evidence that had been presented at trial, and in answer to defense counsel's earlier argument during opening. The prosecutor's remarks were directed at the strength of the state's evidence; they did not shift the burden of proof onto appellant to disprove the state's case, and they were not improper. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 25} Finally, we consider appellant's third assignment of error, wherein he argues that the trial court erred by failing to instruct the jury on the burden of proof immediately following the prosecutor's remarks concerning appellant's failure to produce a check. As indicated above, the prosecutor's remarks did not constitute error. As such, they did not require any curative instruction. In addition, the trial court's instructions, as given, were entirely proper: Before closing arguments, the court explained that such arguments were not evidence; and after closing arguments, the court explained that the state has the burden of proof beyond a reasonable doubt. For all of the foregoing reasons, appellant's third assignment of error is found not well-taken.
 {¶ 26} The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Singer, P.J., Skow, J., Parish, J., concur.